CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 09 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STAR CITY COMICS & GAMES, INC. d/b/a StarCityGames.com, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 7:10CV00417<br>) |
| WEBBED SPHERE, INC. d/b/a TROLL & TOAD, | ) **MEMORANDUM OPINION**<br>)<br>) By: Hon. Glen E. Conrad |
| and | ) Chief United States District Judge<br>) |
| CHRISTOPHER WOLTERECK, | )<br>) |
| Defendants. | )<br>) |

Star City Comics & Games, Inc., d/b/a StarCityGames.com ("Star City"), filed this action against Webbed Sphere, Inc., d/b/a Troll & Toad ("Troll & Toad"), and one of Star City's former employees, Christopher Woltereck, asserting claims of breach of contract, misappropriation of trade secrets, tortious interference with contractual relations, and business conspiracy. The case is presently before the court on the defendants' motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motion will be denied.

### Statement of the Facts and Procedural History

Star City is a Virginia corporation, headquartered in Roanoke, that is engaged in the business of selling trading cards and related products from the game Magic: The Gathering ("Magic"). Most of Star City's sales are made through its website, which also provides online support to Magic players.

Defendant Troll & Toad, a Kentucky corporation, is one of Star City's direct competitors. According to the complaint, Troll & Toad engages in a "virtually identical" business selling Magic products. (Compl. at para. 2).

Defendant Christopher Woltereck previously worked for Star City for approximately four years. Woltereck first served as an assistant to Star City's general manager, before being promoted to the position of buyer in August of 2006. In June of 2008, Woltereck was further promoted to the position of general manager of operations. Given the importance of the management position, and because the position involved additional training and access to confidential and proprietary information, Woltereck was required to enter into a non-competition and non-disclosure agreement with Star City. Woltereck executed the agreement on July 1, 2008. ("Agreement," Compl. Ex. A).

The Agreement contained a covenant restricting Woltereck's ability to work for Star City's competitors. Pursuant to paragraph 1, Woltereck agreed to refrain from being employed in certain positions for other individuals or companies engaged in the business of reselling unsealed Magic cards and associated products for eighteen months following the termination of his employment:

> From the date hereof through the date that is eighteen (18) months after the date on which the Employee's employment with the Company terminates (collectively, the "Period"), Employee covenants and agrees that he shall not, directly or indirectly, own, manage, operate, join in, have an interest in, control or participate in the ownership, management, operation or control of, or be employed in a capacity that is the same or similar to the capacity in which he was employed during the last 12 months of employment with the Company or to serve as a consultant, advisor, or independent contractor to any individual, business, firm, corporation, association, partnership or other entity that now or hereafter engages in the business of reselling unsealed MAGIC THE GATHERING game cards and other associated products, which products have been manufactured by

or at the direction of Wizards of the Coast, Inc., Upper Deck Entertainment or any related entities (the "Business") within the United States.

(Agreement at para. 1).

The Agreement also contained a covenant restricting Woltereck's ability to disclose Star City's trade secrets and confidential information. Pursuant to paragraph 3, Woltereck recognized the confidential and proprietary nature of the information provided to him during his employment; acknowledged that Star City's trade secrets and confidential information would be treated as trade secrets under the Virginia Uniform Trade Secrets Act; and agreed that he would "not for five years after terminating his employment with [Star City] or for so long thereafter as the pertinent information or documentation remain Trade Secrets or Confidential Information, whichever is longer, directly or indirectly use, disclose or disseminate to any other person, organization or entity or otherwise use any Trade Secrets or Confidential Information." (Agreement at para. 3). Additionally, pursuant to paragraph 4, Woltereck agreed to return all trade secrets and other confidential information to Star City upon the termination of his employment.

Woltereck served as Star City's general manager of operations from June of 2008 to June of 2010. Star City alleges that during this period of employment, the company furnished Woltereck with confidential and proprietary business information, such as operations manuals, customer lists, cost and pricing procedures, budget plans, and marketing and business strategies.

On April 19, 2010, Woltereck requested a three or four-week leave of absence. Star City granted the request, and Woltereck began his leave of absence on May 3, 2010. On June 3, 2010, Woltereck emailed Star City and advised the company that he would not be returning to work.

During a subsequent conversation, the president of Star City, Pete Hoefling, Jr., reminded Woltereck of the Agreement. Woltereck confirmed that he was aware of the Agreement, and represented to Hoefling that he did not plan to work for any of Star City's competitors.

Shortly thereafter on June 14, 2010, Jonathan Huston, the president of Troll & Toad, called Hoefling and advised him that Woltereck had applied for a job with Troll & Toad. Huston assured Hoefling that Troll & Toad would not hire Woltereck. Huston noted, however, that Woltereck was of the belief that the Agreement did not prevent him from accepting a job with Troll & Toad. In response, Hoefling emphasized that the Agreement would bar Woltereck from working for Troll & Toad, but advised Huston that he would double-check the Agreement.

Following his phone conversation with Huston, Hoefling reviewed the Agreement and confirmed that it prohibited Woltereck from working for Troll & Toad in a managerial capacity, or in the same or similar capacity in which Woltereck had worked for Star City during the last twelve months of his employment. Hoefling called Huston and shared this information with him.

Approximately one week later, Hoefling heard a rumor that Woltereck was going to work for Troll & Toad. Hoefling called Huston to see if the rumor was true. Huston refuted the rumor and again confirmed that he had no plans to hire Woltereck unless Hoefling would release Woltereck from the terms of the Agreement. Hoefling, however, refused to grant that request.

After his second conversation with Huston, Hoefling met directly with Woltereck. Hoefling tried to dissuade Woltereck from pursuing a job with Troll & Toad, since the Agreement barred him from obtaining such employment and Hoefling was unwilling to release him from the terms of the Agreement.

On July 6, 2010, Hoefling was informed by one of his employees that Woltereck was immediately moving to Kentucky to work for Troll & Toad. Hoefling called Huston and inquired about the rumor, but Huston refused to confirm or deny that his company had hired Woltereck.

Hoefling, through counsel, sent a cease and desist letter to both Woltereck and Troll & Toad on July 8, 2010. Although both defendants acknowledged receiving the letter, neither of them responded to it.

On July 17, 2010, Woltereck informed a Star City employee that he was working for Troll & Toad. Star City alleges, upon information and belief, that "Huston's previous responses to Hoefling whereby he denied that he was going to hire Woltereck were Huston's efforts to intentionally mislead and deceive Hoefling and [Star City] in order to obtain additional time to conspire with Woltereck." (Compl. at para. 22).

Star City further alleges that "Woltereck was entrusted with [Star City's] confidential and proprietary business information as well as its trade secrets for at least the last two years when he served as General Manager - Operations," and that "Woltereck has taken all of his training and [Star City's] trade secrets and confidential and proprietary information to his employment at Troll and Toad." (Compl. at para. 24-25). Star City also alleges, upon information and belief, that Woltereck is currently employed by Troll & Toad "in a managerial capacity and/or in the same or similar capacity as he served at [Star City] immediately prior to the end of his employment," and that Woltereck and his new employer are using Star City's confidential and proprietary information in furtherance of their competing business. (Compl. at para. 27, 42).

Based on the foregoing allegations, Star City filed this action against Woltereck and Troll & Toad on July 22, 2010 in the Circuit Court for the County of Roanoke. The complaint asserts four claims under Virginia law: (1) breach of contract; (2) misappropriation of trade secrets; (3) tortious interference with contractual relations; and (4) statutory business conspiracy.

On September 20, 2010, the defendants removed the action to this court on the basis of the court's diversity jurisdiction. They have since moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Procedure. That motion has been fully briefed and is ripe for review.[1]

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

---

[1] The parties elected to have the motion decided on the briefs, without oral argument.

I. **Count I**

In Count I of the complaint, Star City asserts a claim for breach of contract against Woltereck. The claim is based, in part, on the alleged violation of the non-competition provision contained in paragraph 1 of the Agreement. In moving to dismiss this claim, the defendants contend that the restrictive covenant in paragraph 1 is unenforceable as a matter of law. For the following reasons, the court finds the defendants' particular arguments unpersuasive.

Under Virginia law, a non-competition agreement will be enforced if it is (1) "narrowly drawn to protect the employer's legitimate business interest," (2) "not unduly burdensome on the employee's ability to earn a living," and (3) "not against public policy." Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc., 618 S.E.2d 340, 342 (Va. 2005). Because such restrictive covenants are disfavored restraints on trade, any ambiguities in the contract are strictly construed against the employer. Simmons v. Miller, 544 S.E.2d 666, 678 (Va. 2001). The issue of whether a non-competition agreement is enforceable is a question of law. Id. The resolution of this issue requires consideration of the agreement in terms of function, geographic scope, and duration, with these factors considered together. Id. When evaluating the enforceability of a restrictive covenant in the context of a Rule 12(b)(6) motion, the court's review is limited to the complaint and any properly referenced documents, and may not extend to extrinsic factual evidence. See Capitol One Financial Corp. v. Kirkpatrick, 2007 U.S. Dist. LEXIS 56003, at *6-7 (E.D. Va. Aug. 1, 2007) (holding that dismissal under Rule 12(b)(6) was inappropriate where the court could not conclude "from a purely facial analysis" that a non-compete agreement was unreasonable).

As previously stated, the non-competition provision contained in paragraph 1 of the Agreement prohibits Woltereck from working as a general manager of operations, or in a similar capacity, for any individual, corporation, or other entity engaged in the business of reselling unsealed Magic cards and associated products. The provision remains in effect for eighteen months following the termination of Woltereck's employment with Star City.

In challenging the validity of this restrictive covenant, the defendants first argue that the provision is overly broad in that it prohibits Woltereck from serving as a general manager of operations for "any retail business," regardless of the industry or particular products involved. (Defs.' Br. at 3). As Star City emphasizes in its response, however, the defendants' argument is unsupported by the plain language of the non-competition provision. Read in its entirety, the provision clearly prohibits the defendant only from accepting a position similar to that of general manager of operations with a company "engaged in the business of reselling unsealed [Magic] game cards and other associated products . . . ." (Agreement at para. 1). Because the provision only prevents Woltereck from competing directly with Star City or otherwise managing a direct competitor, and does not go so far as to bar Woltereck from accepting a management position with an unrelated business, the provision is unlike restrictions that have been struck down by the Supreme Court of Virginia, and is more akin to those that have been upheld by that Court. Compare, e.g., Omniplex, 618 S.E.2d at 343 (refusing to enforce a non-competition agreement that precluded a former employee from working for any business that provided support of any kind to Omniplex, since it was "not limited to employment that would be competition with Omniplex"), with Roanoke Engineering Sales Co., Inc. v. Rosenbaum, 290 S.E.2d 882, 883-885

(Va. 1982) (upholding a restriction that prohibited an executive officer of a corporation from owning, managing, or being associated in any manner with the ownership, management, operation or control "of any business similar to the type of business conducted by Roanoke at the time of the termination of this agreement"). Accordingly, the court concludes that the defendants' first argument is without merit.

The defendants alternatively argue that the non-competition provision is "far beyond what is reasonable to protect Star City's legitimate interest in the competitive bidding world of online sales," since the Agreement would prevent Woltereck working for a variety of "nationwide employers," including "Walmart, 7-Eleven Stores, Target, Amazon.com, Books-A-Million, [and] Hobbytown USA, all of which sell 'Magic the Gathering' cards." (Defs.' Br. at 3). In response, Star City again emphasizes that the non-competition provision only precludes Woltereck from working for companies engaged in the specialized business of "<u>reselling unsealed</u>" Magic cards and associated products (Agreement at unnumbered para. 1) and, thus, that the Agreement would not prevent Woltereck from working for retailers that sell new, sealed Magic cards. Because the determination of whether the entities cited by the defendants are engaged in the same, specialized market as Star City requires the consideration of facts outside the complaint, the court agrees with Star City that the issue cannot be resolved at this stage of the proceedings, and that it is more appropriate for summary judgment.

In sum, while the non-competition provision places constraints on Woltereck's future employment, the court is unable to conclude, from a purely facial analysis, that the provision is unenforceable as a matter of law. Accordingly, the defendants' Rule 12(b)(6) motion will be denied with respect to Count I.

## II. Count II

In Count II of the complaint, Star City asserts a claim against Woltereck and Trade & Toad under the Virginia Uniform Trade Secrets Act (VUTSA), Va. Code § 59.1-336. To state a claim under the VUTSA, "a plaintiff must allege sufficient facts to establish (1) that the information at issue is a trade secret and (2) that the defendant misappropriated it." All Bus. Solutions, Inc. v. Nationsline, Inc., 629 F. Supp. 2d 553, 558 (W.D. Va. 2009) (internal citation and quotation marks omitted). The Act defines a "trade secret" as:

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336. Additionally, "misappropriation" is defined as:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>
>     a. Used improper means to acquire knowledge of the trade secret; or
>
>     b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>
>         (1) Derived from or through a person who had utilized improper means to acquire it;
>
>         (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

(3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(4) Acquired by accident or mistake.

Id.

Having reviewed the complaint, the court concludes that Star City has alleged sufficient facts to state a claim under the VUTSA. To support this claim, Star City alleges that, while serving as the company's general manager of operations, Woltereck was entrusted with commercially valuable confidential and proprietary information, such as customer lists, business opportunities, cost and pricing procedures, and marketing strategies, and that Star City has undertaken efforts to maintain the secrecy of such information by having Woltereck and other employees sign the Agreement prohibiting the disclosure of the information. Star City alleges that, despite the Agreement, Woltereck "has taken all of [Star City's] trade secrets and confidential and proprietary information to his employment at Troll & Toad" (Compl. at para. 24-25), and that Woltereck and Troll & Toad have "us[ed] the confidential and proprietary information in furtherance of their competing business without approval or consent from [Star City]." (Compl. at para. 42). Star City further alleges that the defendants' actions "were taken willfully and wantonly, maliciously, intentionally and in bad faith." (Compl. at para. 41). While some of Star City's allegations are arguably conclusory, the court is of the opinion that the complaint, in its entirety, contains sufficient factual content to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 570. Accordingly, the defendants' motion to dismiss will be denied with respect to this claim.

## III. Count III

In Count III, Star City asserts a claim for tortious interference against Troll & Toad. Specifically, Star City alleges that Troll & Toad tortiously interfered with its contractual relationship with Woltereck. Under Virginia law, a claim for tortious interference with a contract that is not terminable at will requires proof of the following elements: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship; and (4) resultant damage to the party whose relationship has been disrupted. Duggin v. Adams, 360 S.E.2d 832, 835-836 (Va. 1987). When a contractual relationship is terminable at will, as is the case with the employment relationship between Star City and Woltereck, "a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed improper methods."[2] Id. at 836 (emphasis in original) (internal citation and quotation marks omitted).

In the instant case, the parties dispute whether Star City's complaint sufficiently alleges that Troll & Toad employed "improper methods." As the defendants note, the Supreme Court of Virginia has stated that this element may be satisfied by actions that are illegal or independently tortious. Id. However, illegal or independently tortious conduct "is but one species of improper methods." Wuchenich v. Shenandoah Mem'l Hosp., 2000 U.S. App. LEXIS 11557, at *54 (4th

---

[2] Pursuant to the Agreement, Star City and Woltereck acknowledged that Woltereck's employment with the company could be terminated "by either party at any time for any reason, with or without cause, at each's sole discretion, with or without notice" and, thus, that Woltereck's employment with the company would be considered "at will." (Agreement at para. 6).

Cir. 2000). The Supreme Court has also emphasized that a method may be "improper under the circumstances" even if it is not independently tortious or illegal. Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 493 S.E.2d 375, 379 (Va. 1997). For instance, "[m]ethods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct[,] [s]harp dealing, overreaching or unfair competition . . . ." Duggin, 360 S.E.2d at 837.

After having carefully reviewed the complaint, the court concludes that Star City has sufficiently stated a claim for tortious interference against Troll & Toad and, more specifically, has alleged adequate facts to establish that Troll & Toad engaged in improper methods. As previously summarized, Star City alleges that Troll & Toad was fully aware of the Agreement and the fact that it contained a non-competition provision, and that Troll & Toad nonetheless actively induced Woltereck to breach the Agreement. Star City also claims that Troll & Toad committed this inducement for unethical and improper purposes – specifically, to injure Star City's business and misappropriate its trade secrets and confidential business information. Additionally, Star City alleges that Troll & Toad's president acted unethically by misrepresenting to Star City that Troll & Toad would not hire Woltereck if he could not be released from the Agreement and by later refusing to confirm whether Woltereck had gone to work for the company. Based on the foregoing, the court concludes that Star City's allegations are sufficient to state a claim of tortious interference against Troll & Toad and, thus, that the defendants' motion must be denied with respect to this claim.

13

## IV. Count IV

In Count IV, Star City asserts a statutory business conspiracy claim against the defendants.[3] Under Virginia Code § 18.2-500, "[a]ny person who [is] injured in his reputation, trade, business, or profession by reason of a violation of § 18.2-499" may seek relief in a civil court. Va. Code § 18.2-500(A). The relevant portion of Virginia Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . ." Va. Code § 18.2-499(A). To ultimately prevail under this statute, "a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and causally related injury." Schlegel v. Bank of America, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007). Additionally, "[t]o survive [a motion to dismiss], an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose." Station #2, LLC v. Lynch, 695 S.E.2d 537, 541 (Va. 2010)

Upon review of the complaint, the court is constrained to conclude that Star City's allegations of a business conspiracy are sufficient to withstand the defendants' motion to dismiss. To support its business conspiracy claim, Star City restates all of the allegations in the preceding 58 paragraphs of the complaint, and alleges that Woltereck and Troll and Toad "agreed, combined, conspired and acted in concert together to harm the business of [Star City]." (Compl. at para 60). Star City further alleges that the conspiratorial conduct was undertaken

---

[3] The court notes that Count IV contains a heading which suggests that the conspiracy claim is asserted only against Troll & Toad. However, it is clear from the subsequent allegations contained in paragraphs 60, 61, and 62 that Star City intended to assert this claim against both of the defendants.

14

"intentionally, purposefully, willfully and wantonly, maliciously, and without lawful justification," and that, as a result of the conspiracy, Star City "has suffered or threatens to suffer injury to its trade, business and profession including lost profits, loss of goodwill, loss of competitive advantage, damage for business interruption and other damage." (Compl. at para. 61-62). While these particular allegations are arguably conclusory, the court is of the opinion that the complaint, in its entirety, contains sufficient factual content to permit the court to reasonably infer that the required elements of concerted action, legal malice, and causally related injury can be met. Additionally, because Star City asserts accompanying violations of the Virginia Uniform Trade Secrets Act, the court concludes that the alleged conspiracy involved an unlawful act as required by Virginia Supreme Court precedent. See Station #2, 695 S.E.2d at 541; see also Zurich American Ins. Co. v. Turbyfill, 2010 U.S. Dist. LEXIS 110056 (W.D. Va. Oct. 15, 2010) (applying Station #2).

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be denied. The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This 9th day of December, 2010.

_____
Chief United States District Judge

15